I have a motion to make, so I'm going to defer to Judge Clevenger to hear that. Your motion is? May it please the court, I move the admission of Katen Deverell Lewis, who is a member of the Bar and in good standing with the highest court of New York. I have knowledge of her credentials and am satisfied she possesses the necessary qualifications. She came to me from the Court of International Trade on high recommendation from Judge Richard Eaton, and she exceeded that recommendation in its entirety. And I move the admission of Shailen Dawson, who is a member of the Bar and in good standing with the highest court of California. I have knowledge of her credentials and am satisfied she possesses the necessary qualifications. Ms. Dawson came to me on my own recommendation. She was an intern in my office at the Court of International Trade, and was the most persistent damn intern I ever saw in my life. The motion strikes me as one that has merit. I think it has exceptional merit, because as the movement judge has familiarity with the qualifications of these two applicants, I do as well. For those of you in the audience who aren't familiar with how our court functions, the clerks in our court all interact actively every day with one another. I've had the pleasure through my clerks of meeting the applicants, and I can also attest to their qualifications that I am in favor of granting the motion. I assume that the presiding judge will recuse himself, since he seems to have a prejudice in this matter. Judge Toronto, do you have a vote? I join you. The motion is granted. Would you please step to the clerk of the court? Do each of you solemnly affirm or confirm yourself as an attorney and counsel of this court, upright and in accordance with the law, and in the support of the Constitution of the United States of America? Congratulations. Welcome to the bench. Thank you. First, we have three argued cases today, not including the one we just did. The first is Illumina v. Ariosa. Are counsel ready to proceed? Yes, Your Honor. Yes, Your Honor. Mr. Reines? Thank you, Your Honor. Edward Reines on behalf of Illumina, and may it please the court. I'd like to start first by addressing the threshold issue of appellate jurisdiction and respond to the court's June 1st letter concerning whether this is the appropriate circuit to hear this matter. The question is, of course, a good one. And the answer, we believe, is that microchip correctly decided the jurisdictional question in the instance of a denial of a motion to compel arbitration or require arbitration. And the primary reason, from my perspective, why that's true is that if you decouple Section 16 of Title IX and the Arbitration Act and the appellate provisions therein from Chapter 83 of Title 28 and the appellate provisions therein, which is what essentially the industrial Costco decision did in Medtronic before it in the Third and Seventh Circuits, if you decouple those, you have a dual path for appellate jurisdiction in the case of denial of an arbitration provision. Can I ask you what is, I guess, perhaps even a threshold question? And we didn't – it's not, I think, discussed in – I don't think it's discussed in any of the three cases you mentioned, the Eighth, Third, or our own case. And that is whether this is a Section 16 listed motion at all. And there's a case from the D.C. Circuit, which I must say I didn't discover until this morning, called Bombardier from 2003, in which the D.C. Circuit said what we have in front of us is a denial of a motion to dismiss under Rule 12. That's not a motion to compel arbitration. It wasn't made as such. It's not a motion to stay arbitration under, I don't know, Section 4 or something. And we're going to be persnickety about the form of the motion and say that a motion to dismiss is not one of the ones listed under Section 16. And we think that when you're making exceptions to the normal final decision rule for appellate jurisdiction, we ought to be persnickety. It then did also go on to say in this particular case, we wouldn't recharacterize the motion as one of the Section 16 listed ones, even if we thought we could. But why isn't there a threshold problem here that this simply is not one of the Section 16 listed motions? Again, a fair inquiry. Obviously, we're dealing with a number of issues here where my friend and I have agreed, so we didn't have it joined up. So there wasn't the kind of development, as you know, that would maybe assist you more than the way it came up. I think that's because we were like-minded about it and read the law the same way. The case law, I think, is one-sided. There is the D.C. Circuit decision. There are some other decisions that are persnickety, as you describe it, and are form over substance. There are numerous cases. I think the Fittek case out of the First Circuit is grouped a bunch of the case law on that. The Rodell-McClarity case out of the Fourth Circuit, which is a 2012 case. The Conrad case out of the Tenth Circuit. There's a body of law that says we look at the substance, not the form, in this arbitration area and specifically on this kind of subject, and a motion to dismiss is effectively a commitment to arbitrate. I think the real question is, from my perspective, is in the motion to dismiss, are you committing to arbitration? In other words, if you just move to dismiss, can you say these guys are-the opposition is on the wrong path? That's one thing. But if you say the opposition is on the wrong path because these are arbitrable and must be arbitrated, I mean, that's- Is there any particular reason that your motion was made as a motion to dismiss as opposed to a motion to compel arbitration or a motion to stay adjudication of the counterclaim pending resolution of arbitration? I mean, I think the best I can say is that since it's their claims that we don't think have merit, we didn't necessarily want to say that-it may have been that they were only asserted as being worthwhile by our opposition for purposes of litigation defense. In other words, for purposes of having that story that they want to tell at the jury trial, which is why it's irreparable injury and why we're here. That goes to the second question. So it was more, this isn't right. If they want to pursue this claim, it has to be an arbitration. They know how to do that, rather than us saying, let's go arbitrate. We just don't think it has any merit at all, and I'm not sure they'd pursue it if it was a pure arbitration. So that's why I motioned this is more appropriate. But in terms of the persnickety form over substance issue, in the document we say if they want to pursue these claims, they must pursue them in the arbitration vehicle, not in court. It doesn't belong in court. It's foreclosed by the requirement of arbitration. I think that's why this list of cases, and it runs longer than that, we can supplement as appropriate and helpful to the court. So on that initial threshold question, that's my answer. If you're ready for me to move to the second threshold question, I'm happy to do that. Okay, thank you. So the point that I made, which was a subtle one, we only had a few days on this again because the parties agreed, but maybe we should have vetted it more originally. That's hindsight. If you have a dual system where an appellant can go either to a regional circuit or to the federal circuit by whether they invoke Title IX or appeal provision, where they go directly to Title 28, Chapter 83, and go to 1291A1, and they go right to A1, and they say, we meet the standard under A1. Really, it's a Carson. I mean, you could look at it as a Gulf Stream issue, but it's really the Supreme Court's Carson. Is it important enough? Is it irreparable harm? The traditional factors that apply as a general proposition. It's not a patent-specific or an arbitration-specific issue. It's just a general issue. If you can go that way and get to the federal circuit, or go under Section 16 of Title IX, and then under at least the rationale of the Costco court, and then you get to a regional circuit, the form-shopping risk is too high, and it makes no sense to have these parallel paths to the very, very, very same appeal. And so there are numerous cases. This court itself, in Rhone-Pelonc, found that the Carson test was met. So you don't even need to invoke Title IX, Section 16, because of this court's Rhone-Pelonc decision, which is, and again, because this has not been briefed, it's a little bit harder to expect you to have kind of working knowledge, but that's 769 of Second 1569. And the Ninth Circuit, which is the relevant circuit in terms of if there was an alternative forum, the Ninth Circuit in the Alaskum case found the same thing. It found the Carson test was met. And there are more recent cases, which I find very interesting to this question. There are more recent cases, including one in the Eighth Circuit and forth and others. Mostly in the context of labor. In the labor field, apparently you can't go into the FFA. You have different arbitration provisions. So if you want to appeal a denial of a request, demand for arbitration in those contexts, you don't have the benefit of Section 16 of Title IX. So you go straight to 1292A1 if you're in that. So it's still a percolating issue in the circuits. So it's acknowledged that you have a right in a denial of a petition for arbitration to go under 1292A1 and just seek it directly. And it just seems to me having this dual system makes no sense. This court, I think wisely, in Microchip, coupled the two and said, what you have to do is when you look at Title IX, you have to understand that what it's saying is for purposes of 1292A1, an arbitration denial qualifies. Can I interrupt for a second? We asked you to talk about jurisdiction and a lot of time has now run. But on the merits, why was Judge Ilstent wrong in the very, very simple logic that their counterclaim would establish a license which would defeat infringement? Boy, is that related. Well, I think for two reasons. There's two counterclaims. I don't want to move too fast. There's two counterclaims. There's a second and a third one. Right. But you did not make any distinction in your opening brief among the counterclaims or as you did in your reply brief between arbitrating the counterclaim and arbitrating the damages that might flow from it. So it seems to me this is a single one ball of wax kind of thing. The reason I use the counterclaim three is because it really illustrates the point that what their claim is is a claim for damages, for breach of contract, for denying that we gave them a license that we don't believe we gave them. Right. That's the claim. It's a money damage claim. That's been our story from day one. It's never changed. And I think why she's wrong, other than maybe it's a little semantic or superficial to say she's construed relating too broadly, but getting more to the gist of it, which is what you're asking, is that it's undisputed that the contract claims, both second and third, but I wanted to identify the third one so it's a little easier for understanding, are independent of the infringement claim. That's why it's wrong. Because their allegation of breach is that we asserted that there was infringement and we denied that they had the license. They're just saying you told us we had a license and you had to give it to us and you're denying it and we're entitled to that. That's independent of infringement. But is it not a premise of their contract claim that you breached by asserting the infringement claim that they in fact had this license? By denying that they had the license. Right, but in order to establish the obviously more difficult proposition that your filing of the lawsuit was a breach, they do have to establish that their activity came within the license. And if they establish that, that will in fact defeat your infringement claim. Will it not? It would, but it's broader than that. They would argue that, here's the point, maybe I'll articulate it a different way. Even if they're not infringing, they think they have a license to this patent. It's independent of the infringement. It's not an element of their claim that they have to prove infringement. But in the context of this case, what's the purpose of their wanting to establish that they have a license? To get damages for supposedly interference with their IPO. Don't you have a complaint of patent law infringement against them? You've said you're infringing my patent. And they say, gee whiz, we'd like to prove that we win that lawsuit. How can they win that lawsuit? No, they're saying, but they're not saying that. That's just a pure license defense. What they're saying is we're entitled to the diminution in value of our company because you interfered with our IPO by asserting that we don't have a license to this patent when we do. So they don't mind if you win an infringement verdict against them? No, they of course mind. Would you be delighted to have that happen to them? Because it's immaterial? It's not necessary to their claim. I don't know what else to say. It's not necessary. Are you suggesting that they could win one of their counterclaims? Yes. Or even, I guess, all of their counterclaims is the more important. They could win all of their counterclaims without establishing that they had a license to the activity issue? No, without an infringement finding. They're just saying they have a license to this patent. They say there is a license to the activity that they're conducting. That's at issue, right? And that would defeat your infringement case. They're saying they have a license to patents. They're saying they have a broad license to many of our patents. Which would defeat your assertion of those patents against them but not as a primary thing. The primary thing is they want damages because we've denied that we're giving them a license to a patent. They do not say. Whether primary or not, I guess it still sounds to me as though there's no dispute that for them to, and I'm not even sure it's necessary for it to be essential, but it sounds like there's actually no dispute that for them to prevail on at least one of their counterclaims, they will have to establish and they're trying to establish that they have a license to the patents you're asserting against them. That's true. And if that's true, your infringement case goes away. That's true too. I mean, doesn't that seem just about as related as could be? No. Maybe not as related. Related as could be. Related enough. Do you mind? I would like to save at least a minute of your time. You'll get a couple of minutes. Okay, thanks. Go ahead. Related as could be would be if infringement was an element. If we dropped our infringement claim. Forget about my related as could be. Related enough. They're prevailing on their counterclaim. I would like to discuss related enough because I think that's the nub of it. If you adopt the kind of mindset that some relationship's enough, it doesn't have to be a tight relationship of the kind that we're talking about, but any relationship's enough, there's three pages of indemnity in this agreement about what happens in the instance of a patent infringement claim. But that's too extreme. The specific relation that seems to me not disputed is if they win one of their counterclaims, your infringement case is thereby defeated. And presumably a number of other infringement cases we could bring. Yes, it's one thing. And to you, that type of relationship where the exception, I mean, again, just as a reset, I know you understand these intellectually, but just as a reset, this exception is to be construed narrowly in light of a broad arbitration provision, in light of a broad policy of arbitration. And it says, don't decide issues of infringement or validity and issues related to that. To me, related to that is remedies that might come out of infringement. They don't want it to be so tight. But to say that anything related, and let me just make the point about indemnity because I don't think it's so out there that it's not instructive. I think it's very helpful. A core part of this agreement, as you can imagine, is who defends the infringement suit that follows if this high-density technology is found to infringe that we're interacting with them on. It's a system of DNA sequencing. Who defends that? Three pages, literally, of stuff on that. It says the title of it is Indemnity in Case of Infringement. Well, if they have a dispute about indemnity, that's related to infringement. Could someone stand up and say it has no relationship at all to infringement? Of course it's related to infringement. But is that really the kind of thing that people that said our breach contract claims, in general in this agreement, in a strong arbitration provision, are going to be disputed? They're saying we got more patents than you gave us in this license, than you're saying you gave us. To me, that's not an infringement claim. That's not about infringement. Yes, you're right if they got all the different rights that are implicit in their claim, then they would extinguish our infringement claim. That is true. I'm saying that is reading related far too broadly for all the reasons that I just identified, including that it sweeps indemnity and some other things. The only other thing I wanted to mention before I sit back down, Pico, is on the jurisdictional question. I just did want to note that this court has applied microchip over the years. I just didn't know if that had come up and in the Qualcomm case, which is 466 F3rd 1366, it was specifically applied that there was Chief Judge Prost's opinion applying it to this context, and I don't think it's time to change course right now. Thank you very much. Mr. Gingler, I'll give you a couple of extra minutes if you need them. Thank you very much. I'd like to first address the question that the court has raised about jurisdiction, and there is a problem, and the problem is that we do not have an appealable order, something which the parties failed to address. I want to address it right now. The problem is that the motion that was brought was a motion to dismiss. The motion was not filed under the Federal Arbitration Act. In fact, if you look at the motion that was filed, it doesn't even mention the Federal Arbitration Act. I mean, nominally, it clearly was not one of the Section 16 listed motions, and I don't mean to be disparaging in saying nominally. In what concrete, real-world sense was this any different from a motion to say, this has to go to arbitration if the other side wants to pursue it? The difference is the following. I agree that the substance matters, right? In other words, it's not the magic of saying Section 9, Tile 9, Section 16. The magic is, what's the remedy you're asking for? Are you making a motion to compel arbitration, or are you invoking a form selection clause and saying you are precluded from being in this court? You can't be here. You want to be someplace else? Go be someplace else. But the remedy that I want is dismissal. This question has been addressed, as far as I can tell, since looking at this starting on June 1st, by five circuits. Five circuits have directly addressed this question. Four of them have come out finding that this order would not be appealable. One has come out the other way. The four... And who is that silly outlaw? It's not us, right? So the four circuits, just to put this on the table, so the 10th circuit would find this to be not appealable in the Conrad v. Phone Directories case. The DC circuit, as you mentioned, in the Bombardier case, would find this to be not appealable. The 2nd circuit, in the Wabteck v. Favely case, would find this to be not appealable. And even the 1st circuit case, which counsel mentioned, the Fittek case, the court would find it not appealable. Now, in that case, the parties did bring a motion to dismiss. But what was different about that case is that the defendant, Bally, sought arbitration. They actually commenced an arbitration proceeding. And so the court there said, I'm reading from the court's decision, If Bally had wanted a dismissal but no decision by the arbitrator, then we would refuse to entertain an appeal by Bally to provide a reference that Bally had not sought and did not want. But in this case, Bally is clearly invoking the accountant dispute resolution remedy, even if a stay rather than a dismissal ensues. Since no one has been prejudicially misled by Bally's request for the over-favorable remedy of dismissal, its request for dismissal in favor of the accountant remedy, which they had thought can be treated as accompanying the lesser alternative remedy of stay and reference. The key is, what are you asking for? They never made a motion to compel arbitration. What's the one case that's the outlier? The other case, the one case which does not come out this way, is from the Fourth Circuit. It's called Choice Hotels International v. BSR. Its reasoning is dealt with very quickly. It's a single paragraph. Before or after these other four cases? That decision is from 2009, and the other decisions, the Tenth Circuit case, which, by the way, has the most detailed reasoning. The Fourth Circuit case distinguishes the other authorities? It does not. It doesn't even talk about them. So if we agree with the Fourth Circuit case, you'd have a certain worthy issue. You might get a trip to the Supreme Court. You know, I'm always looking for a trip to the Supreme Court, but, you know, I'm not sure this is the one where I want to do it. It may be your only chance. What I can tell you is that this issue has been addressed by five courts. Four actually have gone through and actually parsed the statute, parsed the case law, and have said, if you in substance are seeking to enforce an arbitration remedy, whether or not you actually mention the FAA, if that's what you're doing, then you have an appealable order. So why, again, in substance, is that not what they were trying to do? I mean, obviously they would like the claim simply to go away, but if it's not going to go away, their whole motion to dismiss was, there is one and only one place you can bring it in arbitration. That's correct. Because they did not ask for the remedy of compelling arbitration. But that seems not substance before. That's exactly the substance which the courts have looked at in the four circuits which have come out this way. What they have said is, what remedy are you asking for? Are you asking for an order of compelling arbitration? Or are you asking for a stay in favor of arbitration? In that case, don't those cases undermine our microchip case? No, I don't think so. Because microchip deals with the situation of when somebody actually brings a motion to compel arbitration and that motion is denied, then the question is, well, does the federal circuit have jurisdiction? And this is a place where I agree with counsel for Illuminati. If, in fact, they had brought such a motion, then there would be jurisdiction in this circuit. So there are two separate questions. One is, is there an appealable order? And the second is, if there's an appealable order, which circuit does it go to? You both agree that if there's an appealable order, it should come here, but you disagree about whether there's an appealable order. That is exactly correct. And there is no appealable order under the four cases which I have cited. And I would direct the court to take a look at the reasoning of all five of the cases, because five circuits have thought about this question, and looking at the substance. What are you asking for? All right. On the merits of the issue, the counterclaims that we brought turn on literally one thing, whether we have a license to the patent asserted against us. That's it. That's the breach. How is breach of the covenant of good faith and fair dealing particularly related to intellectual property? Well, it is in this case, because if you have a license defense, because you usually have an agreement. I have a license. And so if somebody sues you in violation of your license, you're going to have a breach of contract claim. And that's exactly what's happened here. We have a license to the patent they've asserted against us. It is a defense. It is a direct defense. And no matter how you read related as broad or as narrow. You can establish whether or not you have a license without ever mentioning the word Title 35. In this case? In the fact that the sole issue of whether or not you do or do not have a license, whether there's any relationship at all with patent laws, non-existent. But, you know, under Title 35, right? Right. Non-existent. You say, oh, I see, I have a patent license, but it's just whether you have a license. But under Title... Was there a contract, regardless of the subject matter? Well, here, I think this does deal with Title 35. Because Section 271, Title 35 says, a defendant can only be liable for infringement if the allegedly infringing acts are carried out, quote, without authority. So, in fact, the licensing concept is built into the patent act itself. Okay. Yeah, go ahead. So the breach of the covenant that faith and fear are dealing is related to IP. I'll accept that, okay? But if that's true, then isn't the arbitration clause meaning since it governs the use of IP? I don't think the arbitration clause is meaningless. In fact, the arbitration clause is quite meaningful. And the question is, what is it there, and what purposes does it serve? So the arbitration clause has two parts to it, right? So it has a part which broadly provides that any dispute, claim, or controversy arising out of or relating to the breach, termination, enforcement, interpretation, or validity of this agreement shall be determined by arbitration. Okay? Then it has an exception. Stated quite clearly, it says, this Section 31C, the arbitration provision, shall not apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity, and or enforceability of intellectual property rights. So how is Illumina's interpretation of relating to unreasonable? It's unreasonable because it's supported by absolutely no authority from any place. In other words, there are lots of cases from California. There are federal court cases which look at the term relating to, and all of them interpret them in a relatively broad way. What Illumina does is it basically takes the words out of the agreement, and they say, this is only about issues of infringement, or validity, or enforceability. They take the words relating to right out. They don't give them meaning. They just want to remove them. A dispute. The movement may want to say relating directly to. But Judge Ilston, you know, Judge Ilston actually didn't even have to engage in the debate about broadly or narrowly because she found that a licensed offense to an infringement claim relates directly to infringement. How could it relate less directly? It's as close of a tie you can get. It is a full and complete 100% defense to an infringement case to have a license to a patent. And that's not because you have to, as part of establishing the license, make any particular kind of patent-specific determination, but rather because the consequence of your determining the license would be to terminate their patent claims, right? That is correct. Can I ask you, though, about the thing that I just said you don't have to do? Yes. I took it from a couple of sentences in Illumina's brief, and I don't understand this well enough, so it's going to be a somewhat open-ended question, that determining the scope of the license, which is written in terms of the primary intellectual rights and secondary or something like that, actually will itself require inquiry into whether the products that you are purchasing from them come within the 794 patent. So, I understand. And if that's true, then putting aside infringement, why doesn't your affirmative counterclaim actually relate to an issue of scope? It, in fact, directly does. And thank you for giving me the opportunity to address that. The contract grants licenses, but it does so by describing the categories in a general way. Core IP rights that you have, and then this other category called secondary IP rights, which in the contract, Illumina said at the time that we signed the contract, we're not aware of any secondary IP rights that Illumina has that you need to operate under this agreement, which is effectively a license to the secondary IP rights which exist at the time. Here's the thing. How do you figure out what's in core IP rights and secondary IP rights? Because it just describes the patents in sort of a general categorical way as opposed to listing them. The only way you can do that is to look at the scope of the patent. You have to look at what the 794 patent claims and then say, okay, does that fall into core IP rights or does it fall into secondary IP rights in a way that is not covered by the implied license we got? In our view, we went either way because we clearly have an express license to core IP rights and we clearly have an implied license to secondary IP rights because they said, when we signed the agreement and it's in the agreement, we're aware of no secondary IP rights that you need from Illumina and the 794 patent issued before we signed that agreement. Can I ask you something that may or may not be directly relevant to this scope of the provision? Where does the notion come from and do you have authority for the proposition that if you have or can establish that you have a license covering the activity that they're suing you for engaging in, that not only do you have a defense, but that their act of suing you is a breach of the contract? Those are two, they're related obviously, but they're also distinct. I guess I'm not familiar, at least personally, with the idea that a suit to which there's a license defense, that the act of suing is itself actionable. Your Honor, no one actually has challenged our cause of action on that ground. That's premature. I'm actually aware of no authority which would preclude a suit for breach of a license agreement because the essence of a license agreement is essentially freedom to operate. So what about the mirror image? Are you aware of authority that says you can? I am aware, other than the restatement maybe. Your Honor, I must confess, this has not been an issue which I have researched. For purposes of this appeal, we felt confident at the time that we brought our counterclaim that when we have a contract which says that we have a license, and they sued and they breached that license agreement causing real damage to us, that that's a claim that we have. And they've never brought a motion to dismiss on that ground, and I'm confident that excellent counsel, if they thought they had such an argument, would have made a motion to dismiss on that ground, and that was never made. They did make a motion to dismiss on the grounds that we hadn't done a good enough job of articulating our damages, and we filed an amended complaint, which Judge Ilsen found to be satisfactory. I want to finish by pointing out one final thought, which is, why is the exclusion even in this contract? What's it doing there? In other words, this is a contract where we're buying goods from Illumina, and the goods basically are their sequencing machines, and then the chemical reagents you need to work with the machines, because you've got to buy the reagents from Illumina. It's an exclusive relationship. So it's a buy-sale agreement. So why is there a carve-out for disputes relating to issues of infringement, scope, validity? It's because the agreement also contains licenses. The agreement contains licenses. And so the current dispute actually is the most likely way that this exception would come up, because the licenses are described by category, but not by listing out particular patents. So the parties anticipated there could be a dispute about whether or not an infringement suit can or cannot be brought. That's what this provision is doing in an agreement that's a buy-sale agreement.  Thank you, Lawrence. Thank you, Your Honor. Thank you, Your Honor. I appreciate that. Starting with the interchange between Judge Clevenger and my friend, I think that really distilled this to a simple essence, which is this is a contract dispute about what rights they thought they got. It really is. There's nothing about Title 35, about infringement or validity, that needs to be decided whatsoever. Counsel is talented, but that's the only gist that you can get out of that interaction. Can I just ask you about this sentence which appears? This is on page four of your blueprint, and there's a version of it on page six of your reply brief. The goods that Illumina supplies to Area OTA under the supply agreement do not include the type of proprietary custom DNA assay optimization kits and techniques that are the subject matter of the 794 patent. Then in the reply brief, you say, at most their counterclaim will require analyzing the subject matter of the 794 patent in relation to the goods it purchases pursuant to the supply agreement. Why putting aside infringement, the infringement word in the exception in the arbitration clause, why does that not itself establish that the scope of the patent is actually part of their contract claim? Let me start with, again, an argument that's being raised that wasn't made by the other side. The other side never relied on scope. It was an infringement was the argument. We documented that in our appeal brief. That's all that Judge Ilken found, so the order that you're reviewing only relies on infringement. This is, again, a theory that wasn't pre-litigated with another kind of oral argument day conversion for Area OTA. The answer is, this is essentially a contract dispute about the nature of the goods they sold and what licenses they get interpreting things. Exactly how they're going to argue it at the end of the day, I don't know. Fact is that the accused product is not, it doesn't involve reagents that we sell them. It's actually a simple issue, which is, no, you don't get license rights for something that you homebrew yourself and don't make. That's the ultimate dispute if you want to get that at the brass tacks. I would just say that if you pull the lens back, and based on the interchange here, your question is, is this a contract dispute about what rights they got? Or is this an issues of infringement or validity? This is not about issues of infringement or validity. This is about a contract and what rights they got, and the broad provision of the arbitration says that this is to be arbitrated, and given all that we need to do is have a reasonable debate, which I think we've had here today, and then we win under very well settled Supreme Court principles, this is arbitrable. Okay, I guess the final point I wanted to make is on, which I think will be helpful, because the record's not developed on a lot of these points, is I think in terms of what the law and the different circuits are on this form over substance question, I actually think, although it sounded like there was disagreement, there's generally agreement, which is you don't look at the form, you look at the substance. I think that's what even Mr. Gindler said time and again, and when he says all these decisions support him, it's because he thinks that we didn't effectively ask for arbitration and I would just cite our motion, which is not in the appendix, said things like, the issues presented in Illumina's motion are simple, because the contract that Illumina allegedly breached includes an arbitration provision, Arios' breach of contract counterclaims must be arbitrated. So we were very emphatic. Are there any other questions? No, I'm just going to make a comment. Well, thank you so much for the amount of time, and I apologize if it seemed like we got deeper in, but a lot of this hasn't been briefed. I wouldn't point out the motion actually is in the appendix. Yeah. Thank you, counsel, for a well-argued matter. We're going to, we agree in advance, ask for letter briefing on jurisdiction. We blindsided you with the case, which is probably having lived in Quebec when it was a local company, Bombardier. And so we'll issue an order to that effect to give you exactly what we want. Okay. All right. Thank you very much.